UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DESHAUN STATEN,

        **Plaintiff,**

  v.                            Case No. 20-CV-1009

L. BUCHANAN,
GARETH FITZPATRICK,
DR. KELSEY STANGE,
DR. DANIEL NORGE,
LARRY FUCHS, KEVIN GARCEAU,
GWEN SHULTZ, LINDSEY WALKER,
MARY LARSON, T. MILLER, and
DENISE VALERIUS,

        **Defendants.**

---

## ORDER

---

Plaintiff Deshaun Staten, a prisoner at Columbia Correctional Institution (CCI) who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983 on July 6, 2020, alleging that the defendants violated his constitutional rights. (ECF No. 1.) That same day he filed a motion for a preliminary injunction. (ECF No. 2). He also filed a motion to use funds from his release account to pay for his trust account statement (ECF No. 7) and a motion to screen the complaint. (ECF No. 10.)

Not all parties have had the opportunity to fully consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c). Nonetheless, the court has jurisdiction to screen the amended complaint under the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of

Understanding between the Wisconsin Department of Justice and this court. This order resolves Staten's motions and screens his complaint.

*Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) applies to this case because Staten was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id*

On July 14, 2020, Staten filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 6.) On July 16, 2020, the court ordered Staten to pay the initial partial filing fee of $1.45 by August 6, 2020. Staten paid the initial partial filing fee on August 7, 2020. The court will grant Staten's motion for leave to proceed without prepayment of the filing fee and allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

*Motion to Pay Fee for Trust Account Statement out of Release Account*

Staten also filed a motion requesting that the court order CCI to deduct the fees for his trust account statement out of his release account. (ECF No. 7.) According to Staten, the fee to print out his six-month trust account statement would not be more than $1.00. He claims that, if the court does not allow him to pay for this fee out

2

of his release account, he will suffer the irreparable harm of having the claim dismissed.

This court lacks the authority—statutory or otherwise—to order that a prisoner be allowed to tap into his release account to pay current (or future) litigation costs. *Cf. Wilson v. Anderson*, No. 14-CV-0798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (declining to order that a prisoner's full filing fee be paid from his release account, "[g]iven the [DOC's] rationale for segregating funds into a release account" and the absence of any statutory authority allowing the court to do so). Denying prisoners the use of their release accounts to fund litigation costs is also prudent given that those accounts are "restricted account[s] maintained by the [DOC] to be used upon the prisoner's release from custody." *Id.* Permitting a prisoner to invade that account for litigation costs could be a detriment to that prisoner's likelihood of success post-incarceration, *see* Wis. Admin. Code § DOC 309.466 (stating that disbursements from a prisoner's release account are authorized "for purposes that will aid the inmate's reintegration into the community"), especially if the prisoner is overly litigious. Considering the stated purpose of the release account, the court denies his motion.

*Motion to Screen the Complaint*

On August 26, 2020, Staten filed a motion requesting the court to expedite screening the complaint. (ECF No. 10.) Because the court is now screening his complaint, his motion is moot. However, in his motion, Staten states that, once the

complaint is screened and defendants have answered, he will be ready to file his motion and brief for summary judgment. (ECF No. 10 at 1.)

The court cautions Staten that, if his claims survive screening, he must abide by the scheduling order the court will issue after the defendants answer the amended complaint. Discovery **should not be served until the court issues a scheduling order.**

*Screening of the Complaint*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*The Complaint's Allegations*

Staten's complaint is 21 pages long. (ECF No. 1.) Pages 1-17 appear to be one separate complaint, and pages 18-21 appear to be another complaint. (*Id.*) On the whole Staten's allegations do not appear to follow any organizational structure or timeline, and many of his allegations are incomplete or half thoughts, leaving the court to speculate as to connections between defendants, dates, documents, and incidents. As such, the court has summed up his allegations to the best of its ability.

Staten begins by alleging that he suffers from numerous mental health conditions, including "severe depression, schizophrenia, ADHD, PTSD, and academic dysfunction impulse behavior." (*Id.* at 3.) As a result of his mental health issues, he has attempted suicide many times, using many methods, including overdosing and starvation. (*Id.*)

Staten alleges that the "psychologicals defendants" knew of his mental health issues and knew he needed programming and treatment that CCI could not provide. (ECF No. 1 at 5.) The "psychologicals defendants" also knew about plaintiff's hunger strike and failed "to follow DAI policy and procedure Hunger Strike # 300.00.57." (*Id.*) In addition to the "pyschologicals defendants," Staten alleges that defendant Dr. Kelsey Stange knew he was on a hunger strike because he had filed an inmate complaint on May 6, 2020 concerning his hunger strike. (*Id.* at 6.) Also, during a face-to-face examination, Dr. Stange allegedly told Staten that "she will make sure he do [*sic*] not get any mental health treatment on her watch, because Dr. Stange don't like prisoners that physical assaulting [*sic*] at staff member." (*Id.*) Staten further alleges that defendant Dr. Daniel Norge knew he was on a hunger strike but refused to follow DAI policy. (*Id.* at 7.) Staten includes a list of "the common types of deliberate indifference" he experienced but does not provide specific details, such as who was involved or when these incidents allegedly happened. (*Id.*)

Staten next alleges that defendant L. Buchanan knew about his hunger strike because Staten had filed a health services request letting the health services unit know he was undergoing a hunger strike. (ECF No. 1 at 8.) However, Buchanan "showed she did not care about plaintiff's life." (*Id.*)

Staten then describes how he is currently suffering from pain in his wrist and back. (ECF No. 1 at 8.) He put in a health services request but has been waiting over six months to see a nurse to address this pain. (*Id.*)

Staten further alleges that defendant Gareth Fitzpatrick knew he was on a hunger strike and that his blood count was low; his urine had ketones; and his kidneys were low-functioning. (ECF No. 1 at 8.) He states that Fitzpatrick did not address these issues. (*Id.*) Defendants Gwen Schultz and Kevin Garceau also were aware of Staten's hunger strike because they were emailed Staten's inmate complaint about the hunger strike. (*Id.* at 9.) According to Staten, Schultz ignored this information, and Garceau put Staten on the list to transfer out of CCI in response. (*Id.*)

Staten next turns to defendant Lindsey Walker, whom he alleges has been retaliating against him since he arrived at CCI on November 26, 2019. (ECF No. 1 at 10.) When Staten was placed on administrative confinement on January 27, 2020, Walker allegedly made him wait 30 days to receive his television in violation of DAI policy. (*Id.*) According to Staten, Walker refused to give him his television or any other levels of administrative confinement privileges because he had a long history of staff assaults. (*Id.*)

Staten then asserts that defendant Mary Larson "had all the knowledge" because she knew about Staten's inmate complaint from May 6, 2020. (ECF No. 1 at 11.) Staten states that Larson was responsible for ensuring that prisoners were safe but ignored his complaint and thus did not ensure his safety. (*Id.*) Similarly, defendant T. Miller, who is a complaint examiner at CCI, "had all the knowledge" and could have ensured that Staten's constitutional rights were not violated but chose not to. (*Id.* at 12.)

Staten also alleges that defendant registered nurse Denise Valerius read his health services request from May 6, 2020, stating that he was on a hunger strike. (ECF No. 1 at 12.) Valerius responded that Staten would be monitored pursuant to policy. (*Id.*) Staten states that he did not see anyone from the health services unit until May 12, 2020. (*Id.*) At that time, he saw non-defendant Nurse Gardener, who ran lab tests. (*Id.*) When the lab results came back, it showed that Staten had ketones in his urine and his kidneys were not functioning properly. (*Id.*) Nurse Valerius never addressed those issues. (*Id.*)

Staten next lists each defendant, and next to each defendant's name he lists dates. (ECF No. 1 at 13-14.) But he does not include any details connecting those dates and defendants to specific incidents. Staten's allegations then shift back to Walker, alleging that she allowed non-defendants Officer Randall and Sergeant Fosshage to deny him his medications on May 27, 2020. (*Id.* at 14.) As a result, Staten wrote to defendant Larry Fuchs, the warden, informing him of Walker's actions, including that Walker was denying "administrative confinement programming" to him and other inmates. (*Id.*) According to Staten, Fuchs did not respond. (*Id.*)

Staten also lists the relief he seeks. He asks to be placed in general population; have his blood sugar checked by a nurse daily; be sent to University of Wisconsin Madison Hospital for a liver and kidney evaluation; and be transferred to Wisconsin Resource Center or, in the alternative, Oshkosh Correctional Institution. (ECF No. 1 at 16) He also seeks punitive and compensatory damages. (*Id.* at 16-17.)

What appears to be another complaint starts at page 18. It references the first complaint, making it supplemental in nature, and contains two summary allegations. First, that "defendants were deliberately indifference [*sic*] by knowing plaintiff suffered injury to the kidneys and failing to treat injuries causing extreme chronic pain and suffering." (ECF No. 1 at 19.) Second, that unspecified defendants "wrote plaintiff a fabricated ticket" because Staten filed a complaint "against all defendants." (*Id.*) The relief sought appears to be fundamentally the same as the relief sought in the original complaint. (*Id.* at 20-21.)

*Analysis*

Because the allegations in Staten's complaint are vague and require the court to make several inferences, the court cannot discern what claims Staten is attempting to bring. While Staten lists several claims at the beginning of his complaint, including claims under 42 U.S.C. § 1983, the Americans with Disability Act, negligence under Wis. Stat. § 893.55, malpractice, Eighth Amendment deliberate indifference to medical needs and First Amendment retaliation (ECF No. 1 at 2), courts cannot simply accept "abstract recitations of the elements of a cause of action or conclusory legal statements" as properly pleaded claims. *Twombly*, 550 U.S. at 570.

Also, while the court must liberally construe "a *pro se* complaint 'however inartfully pleaded' . . .[holding it] to 'less stringent standards than formal pleadings drafted by lawyers,'" *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519 , 520-21 (1972)), the complaint still must, on some level, comply with Federal Rule Civil Procedure 8(a)(2). Rule 8(a)(2) states that a complaint "must

9

contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). A pro se plaintiff cannot leave the court "to guess what claims [he] intends to assert against which defendants." *Dunigan v. St. Clair Cty. Jail Med. Staff*, No. 15-cv-47, 2015 WL 2455505 at *2 (S.D. Ill. May 22, 2015).

Staten's allegations appear to fall into five or six different categories. First, he alleges that the "psychologicals defendants," Dr. Stange, Dr. Norge, L. Buchanan, Fitzpatrick, Schultz, Garceau, and Valerius knew about his hunger strike and did nothing to address it. Most of the allegations against these defendants are vague and lack detail. For instance, it is unclear who the "psychologicals defendants" are and how they ignored his hunger strike.

Staten's claims against Dr. Stange and Dr. Norge contain slightly more detail but are no less problematic. He asserts that they did not follow the hunger strike procedure set forth by DAI policy. (ECF No. 1 at 5.) But that does not state a claim under 42 U.S.C. § 1983, which only "protects plaintiffs from constitutional violations, not violations of state laws, or . . . departmental regulations." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Staten does not allege anything explaining how Dr. Stange and Dr. Norge were otherwise deliberately indifferent to his hunger strike. Similarly, for Buchanan, Fitzpatrick, Schultz, and Garceau, Staten states only that they knew about his hunger strike but did not care or do anything.

The only allegations that come close to stating a claim are the allegations against Nurse Valerius, who Staten alleges knew he was on a hunger strike through his health services request. (ECF No. 1 at 12.) As a result of filing the health services request, Staten received lab work, facilitated by a non-defendant nurse. (*Id.*) Once the lab work came back showing that there were problems with his kidneys, he asserts Valerius did nothing. (*Id.*) But he fails to allege that she knew about his lab results or that it was her responsibility to address the health issues the lab work uncovered.

In the same vein, in what appears to be a supplemental complaint, Staten alleges that the defendants were deliberately indifferent to his medical needs because they knew Staten suffered an injury to his kidneys and failed to treat it. (ECF No. 1 at 19.) Again, though, he fails to specify which defendants were deliberately indifferent, and the court would have to make too many inferences to link this claim to any of the named defendants.

The second set of claims involves the "psychologicals defendants" and Dr. Stange failing to get him the mental health programming he needs. Again, the court does not know who the "psychological defendants" are. For Dr. Stange, he asserts specifically that she intentionally refused to provide him mental health services because he physically assaults staff members. (ECF No. 1 at 5.) But there is not enough information for the court to discern whether this claim is intended to be a deliberate indifference claim, a First Amendment retaliation claim, or both.

11

The third category of potential claims concern Staten's allegations about the pain in his wrist and back and how he has been waiting over six months to see a nurse to address this pain. (ECF No. 1 at 8.) This is also the subject of his preliminary injunction motion addressed below. Staten does not allege who is responsible for denying him access to the health services unit. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Because § 1983 makes public employees liable "for their own misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specifically allege what each individual defendant did (or did not do) to violate his constitutional rights. Staten's complaint does not do that.

The fourth potential claim appears to be against Walker for her retaliatory handling of Staten's administrative confinement privileges. Specifically, he states that, by denying him a television contrary to policy, she retaliated against him. (ECF No. 1 at 10.) However, he never states why she was retaliating against him or what protected actions he engaged in to warrant retaliation.

The fifth claim alleges that Mary Larson and T. Miller "had all the knowledge" because they received his May 6, 2020 inmate complaint, but they failed in their duty to make sure Staten was safe. (ECF No. 1 at 11.) The complaint does not explain what "all the knowledge" means, nor does it state what Mary Larson and T. Miller did (or

12

failed to do) to jeopardize Staten's safety. Additionally, complaint examiners can only be held liable under § 1983 if they caused or participated in the conduct that is the subject of the complaint. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). If their only role was to review the complaint, then they cannot be held liable. *Id.*

Finally, in his supplemental complaint Staten includes a retaliation claim in which he alleges that he received a fabricated ticket for filing a complaint against all defendants. Again, this claim does not specify who wrote the fabricated ticket or provide details about the inmate complaint that allegedly resulted in the ticket.

In sum, Staten's complaint contains some information relevant to each claim he is attempting to bring, but not enough for the court to discern what the claims actually are. In other words, he provides the puzzle pieces for various claims, but he fails to put the puzzle together for the court. As such, the complaint violates Fed. R. Civ. P. 8(a)(2) and fails to state a claim upon which relief can be granted.

Even if there were discernable claims in Staten's complaint, it would still not be acceptable. A plaintiff cannot bring *unrelated* claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants

13

Case 2:20-cv-01009-WED   Filed 08/28/20   Page 13 of 19   Document 11

in one case "is limited to claims arising from the same transaction or series of related transactions"). For example, if a plaintiff has one claim against Defendants A, B, C, and D and an unrelated claim against Defendants A, B, and E, if the plaintiff wants to proceed with both claims in the same case Rules 18 and 20 require that he dismiss defendants C, D, and E. That way, he can proceed against the two defendants (A and B) who are common to both claims. If the plaintiff wants to pursue claims against defendants C, D, and E, he must pursue separate lawsuits. To be clear, under Rule 18 Staten can join as many claims as he wants against an opposing party, but in doing so he must still comply with Rule 20.

There are at least two, and possibly more, unrelated claims in Staten's complaint. The court cannot tell for certain because, as demonstrated above, several of the claims are missing key details. At minimum it is clear that the claims related to the hunger strike involve separate and distinct defendants from the retaliation claim against Lindsay Walker. The court cannot tell if the deliberate indifference claims for failing to address plaintiff's wrist and back pain are also unrelated to the other claims because the court does not know who was involved in denying Staten health services. Similarly, for the retaliation claim involving the fabricated ticket, the court cannot discern if it is unrelated because the court does not know which defendants were involved.

Generally, when a complaint violates Rules 18 and 20 the court must reject it "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed.

14
Case 2:20-cv-01009-WED  Filed 08/28/20  Page 14 of 19  Document 11

R. Civ. P. 21). However, as explained above, Staten's complaint also suffers from vague and incomplete allegations in violation of Rule 8. As such, the court will give Staten the opportunity to amend his complaint. Staten may choose which of the related claims he wants to bring, and he also must provide clear, short, and plain statements that will allow the court to understand what claims he is bringing. Staten must file his amended complaint within twenty-one days of the date of this order. He may bring the unrelated claims in separate lawsuits if he wishes to do so. If Staten does not file an amended complaint consistent with the instructions here, the court will dismiss the complaint for failure to state a claim upon which relief may be granted.

When writing his amended complaint Staten should provide the court with enough facts to answers to the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) When did each person violate his rights?; and, 4) If relevant, where specifically did the violation happen?Staten's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but, as explained above, it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his constitutional rights.

The court is enclosing a copy of its complaint form and instructions. Staten must list in the caption of his amended complaint all of the defendants he is choosing to bring an action against. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which of

15

the named defendants he believes committed the violations that relate to each claim. **If the space is not enough, Staten may use up to five additional sheets of paper.** The amended complaint takes the place of the prior complaint and must be complete without reference to his prior complaint.

*Motion for Preliminary Injunction*

Staten also filed a motion for a preliminary injunction to stop the retaliation against him, to get medical treatment for his wrist and back pain, and to be transferred to another institution. (ECF No. 2.) A preliminary injunction or temporary restraining order is "an extraordinary remedy" that a court may grant only after a "clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7. 22 (2008). To make such a showing, the plaintiff must demonstrate that 1) his underlying case has some likelihood of success on the merits; 2) no adequate remedy at law exists; and 3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If the plaintiff makes that showing, then the court must balance the harm to each party and to the public interest caused by granting or denying the injunction. *Id. See also Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809 813 (7th Cir. 1999). Injunctive relief is appropriate only if it seeks relief from actions similar to the plaintiff's claims in the underlying case. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Neuroscience, Inc. v. Forrest*, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec 5, 2013).

Staten fails to demonstrate that his underlying case has some likelihood of success on the merits. His motion suffers from many of the same deficiencies that his complaint suffers from. The court does not know who is responsible for denying him medical care for his back and wrist pain. It is also unclear who exactly is retaliating against Staten and why. Additionally, the court cannot grant transfers to a different institution because it is outside the scope of what the court can order. As such, his motion for a preliminary injunction is denied.

## ORDER

**IT IS THEREFORE ORDERED** that Staten's motion for leave to proceed without prepaying the filing fee (ECF No. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that Staten's motion pay fee for trust account statement out of release account (ECF No. 7) is **DENIED.**

**IT IS FURTHER ORDERED** that Staten's motion for screening the complaint (ECF No. 10) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Staten may file an amended complaint that complies with the instructions in this order on or before **September 17, 2020**. If Staten files an amended complaint by that date, the court will screen the amended complaint under 28 U.S.C. § 1915A. If Staten does not file an amended complaint by September 17, 2020, the court will dismiss this case based on his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk's Office mail Staten a blank prisoner complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Staten shall collect from his institution trust account the $348.55 balance of the filing fee by collecting monthly payments from Staten's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Staten is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Staten is confined.

**IT IS FURTHER ORDERED** that Staten mail all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

Staten is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Staten is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Staten's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Dated at Milwaukee, Wisconsin this 28th day of August, 2020.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge